## 36986. ETZION v. EVANS.

HILL, Presiding Justice.
The State of Georgia is not a sanctuary for child snatchers.
The parties to this appeal were divorced in New York by a decree dated May 25, 1977, which awarded custody of their minor child, a son born in 1972, to the mother. Subsequently the mother and child moved to Connecticut and then to Pennsylvania.[1] In testimony before the court below, the father admitted that he presented to the

---

[1] The husband contends and the court below found as a fact that these moves violated the New York order. However, the New York decree of May 25, 1977, does not prohibit the mother from moving out of New York. Furthermore, on October 30, 1979, after she had moved to Philadelphia, the New York court reaffirmed the award of custody to the mother. The court's order recites that the husband had sought to modify the original award of custody and had sought an order holding his ex-wife in

New York courts on four separate occasions his fear that his wife, who was born and raised in Israel, would return there with the child, and each time the courts awarded custody to the mother.

During the course of these proceedings in New York, on September 28, 1979, the father, while exercising his visitation rights under the New York decree, failed to return the child to the custody of the mother and instead surreptitiously removed him to Georgia.

On January 17, 1980, having discovered the whereabouts of her ex-husband and her child, the mother filed a petition for writ of habeas corpus in the superior court. She alleged that she had been awarded custody of the child by the divorce decree, that subsequently her ex-husband had refused to return the child after exercising visitation rights, and that she had filed a petition for writ of habeas corpus in the State of New York, Nassau County, which was granted on October 30, 1979.[2] The father answered and counterclaimed for an award of custody to himself. He relied on the Uniform Child Custody Jurisdiction Act, Code Ann. Ch. 74-5, to give the court jurisdiction and alleged that his actions were necessary and justified because the mother intended to move to Israel with the child. Following a hearing on February 14, 1980, the trial court found that the husband had, "upon exercising visitation . . . failed to return said child to the legal custodian, and has improperly retained the child after such visitation" and that he had "failed to establish that it is in the best interest of the child that this Court exercise its jurisdiction over the child to modify the custody decrees of the County of Nassau, State of New York." The court ordered the child returned to the mother.

While motions for reconsideration were pending the mother moved to Israel with the child. The trial court then entered an order on June 25, 1980, relying in part on *Webb v. Webb,* 245 Ga. 650 (266 SE2d 463) (1980), cert. granted —— U. S. —— (65 LE2d 21) (1980). The court found that the mother had deliberately misled the court by testifying that she did not intend to move to Israel, and awarded custody to the father on the ground that it was in the best interests of the child that he be raised in this country. The mother filed an

---

contempt "for her alleged failure to obey an order of this court dated February 9, 1979, as modified by an order of this court dated June 12, 1979 . . . restraining and enjoining the plaintiff from removing the infant issue from the jurisdiction of this court. . . ." Although this recitation indicates that there may have been an order requiring her to remain in New York, we note that the New York court nonetheless reaffirmed the award of custody to the mother.

[2] A copy of the New York order is in the record. Although it is not apparent on its face that it is an order on a habeas corpus petition (see fn. 1, supra), it is clear that the New York court reaffirmed the award of custody to the mother.

application to appeal which was granted by this court.[3]

1. The mother contends that the trial court erred in assuming jurisdiction under the Uniform Child Custody Jurisdiction Act (interstate), Code Ann. § 74-504. We agree. There was no abandonment here by the mother as in *Webb v. Webb,* supra, and the father did not institute proceedings here.

In *Yearta v. Scroggins,* 245 Ga. 831 (268 SE2d 151) (1980), this court limited *Webb v. Webb,* and construing the Uniform Child Custody Jurisdiction Act, Code Ann. Ch. 75-5, particularly Code Ann. § 74-509, as well as policy enunciated in Code Ann. § 24-304b, the Georgia Child Custody Intrastate Jurisdiction Act, we reaffirmed *Matthews v. Matthews,* 238 Ga. 201 (232 SE2d 76) (1977).[4] In *Yearta* we held: "The courts of this state, therefore, will continue to refuse to provide a forum for relitigating custody except where the legal custodian resides." (245 Ga. at 832-833.)

In *Bishop v. Bishop,* 247 Ga. 56 (273 SE2d 394) (1981), we stated: "As a matter of public policy, we refuse to provide a forum in Georgia for relitigating custody when the noncustodial parent resident in Georgia improperly has removed the child from the physical custody of the custodial parent who resides in another state."

In the case now before us the issue of the mother taking the child to Israel had been repeatedly raised in the courts of New York, the issue of custody was pending in New York, the residence of the mother (the child's legal custodian) was either Pennsylvania or New York, and Georgia was not the child's "home state" (Code Ann. § 74-503(e)). Instead of abiding by the New York court orders and instead of bringing an action in Pennsylvania, the father chose to extend his visitation rights unlawfully and to invoke the aid of a Georgia court.

A noncustodial parent who illegally seizes a child or illegally detains a child at the end of a visitation period is not to be given sanctuary by our courts. *Matthews v. Matthews; Yearta v. Scroggins;*

---

[3] We do not decide that an application was necessary in this case. See *Bryant v. Wigley,* 246 Ga. 155 (1) (269 SE2d 418) (1980). Our jurisdiction is based on the mother's petition for habeas corpus.

[4] In *Matthews v. Matthews,* 238 Ga. 201, 203 (232 SE2d 76) (1977), we stated: "This court is concerned with the number of cases in which children are illegally seized or illegally detained at the end of visitation periods by their noncustodial parents. . . . We believe that by denying these parents a convenient forum in which to relitigate custody, these practices may be reduced or stopped altogether. It is thus in the public interest to discourage such conduct without any prejudice whatsoever to the noncustodial parent's right to bring such a petition where the legal custodian, and the children, reside."

*Bishop v. Bishop,* supra. If it is in the child's best interest that child custody be changed, the noncustodial parent must, instead of snatching that child, seek a change of custody where jurisdiction lies. We have the utmost confidence in the courts of our sister states that they will protect the interests of the child. We also have the utmost confidence that child snatching is not in the interest of the child. The trial court erred in changing custody to the noncustodial parent and in denying habeas corpus relief to the custodial parent.

2. In its order of February 14, 1980, ordering the child returned to his mother, the trial court expressly reserved its ruling on the mother's attachment for contempt against the father. Subsequently, on March 27, 1980, the trial court found the father in wilful contempt for having failed to return the child to his mother as required by the New York decree, but held that he could purge himself by paying the mother $1000 in necessary expenses and $1000 attorney fees. The award of expenses and attorney fees to the mother is authorized by Code Ann. § 74-516 (b). *Harvey v. Harvey,* 244 Ga. 199 (259 SE2d 456) (1979). See also Code Ann. § 74-509 (c). In its order of June 25, 1980, awarding custody to the father, the trial court abated the award of attorney fees and expenses. We find that the original award of attorney fees and expenses was authorized by the facts of this case, that the award of custody to the father was error, and hence that part of the custody order abating the award of attorney fees and expenses was error.

3. The father has made a motion in this court for us to withhold our decision in this case until such time as the mother returns the child from Israel. In view of the foregoing decision, we decline to impose such sanction in this case.

*Judgment reversed. All the Justices concur.*

DECIDED APRIL 8, 1981.

*Greene & Davis, Laurie C. Davis,* for appellant.
*Lawrence B. Custer,* for appellee.