A96A0651. IN THE INTEREST OF M. M., a child.
(474 SE2d 53)

BLACKBURN, Judge.

We granted Mary Grace Mills' application for interlocutory appeal in order to determine if the trial court properly exercised jurisdiction to hear this interstate custody dispute under the emergency condition exception of OCGA § 19-9-43 (a) (3) (B), the Uniform Child Custody Jurisdiction Act (UCCJA).[1]

The parties were granted a divorce by the Superior Court of DeKalb County in May 1993. Joint child custody was awarded to the parties with primary physical custody of the child continuing in the mother. In the summer of 1994, the mother and child permanently moved to Evansville, Indiana, where they have continuously resided. Except for periods of visitation with his father in Georgia, the child, who is presently six years old, remained in Indiana until the father filed this action in September 1995.

The child spent an extended summer visitation with the father beginning in May 1995, but returned to Indiana prior to his scheduled Labor Day visit with his father in Atlanta. It was agreed that the child would be returned from the Labor Day holiday visitation to his mother in Indiana on September 5, 1995. However, the father refused to return the child at the appointed time and, instead, filed this civil action seeking to modify the custody arrangement.

1. On appeal, the child's mother contends that the trial court erred in determining that it had jurisdiction to hear the dispute.

One of the codified purposes for the legislature's passage of the UCCJA is to "[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available and also to assure that the courts of this state decline the exercise of jurisdiction when the child and his fam-

---

[1] The trial court sits as the trier of fact on jurisdictional issues, and its factual determinations are tested by the any evidence rule. See *McLendon v. Albany Warehouse Co.,* 203 Ga. App. 865, 866 (418 SE2d 130) (1992).

ily have a closer connection with another state." OCGA § 19-9-41 (a) (3). Based on this purpose, the UCCJA limits jurisdiction to decide child custody matters to the home state of the child except in limited situations. See OCGA §§ 19-9-43 (a) (1) (A), (B); 19-9-43 (a) (3). The "home state" means the state in which the child lived with a parent for at least six months immediately preceding the time involved. Periods of temporary absence are counted as part of the six-month period. See OCGA § 19-9-42 (5). The home state here is clearly Indiana.[2]

In the present case, the trial court based its exercise of jurisdiction on the emergency provision contained in OCGA § 19-9-43 (a) (3) (B). An emergency situation exists where the trial court determines that the exercise of its jurisdiction "is *necessary* . . . to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent." (Emphasis supplied.) OCGA § 19-9-43 (a) (3) (B). This basis of jurisdiction "is limited to a situation in which an extreme emergency exists." (Citations and punctuation omitted.) *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 402 (436 SE2d 700) (1993).

In the present case, the trial court based its grant of emergency jurisdiction on its finding of evidence of sexual and physical abuse involving the child. The sole evidence upon which the trial court relied for its determination of sexual abuse was a letter sent to the child's father from the director of the child's former school in Indiana. Pretermitting the admissibility of the letter, we find that it does not support the trial court's determination that an extreme emergency existed necessitating its exercise of emergency jurisdiction.

The letter detailed certain behavior displayed by the child which included "swearing, talking about bathroom functions, exposing his privates, . . . and pulling down the panties of younger children." The director did not indicate that the child himself had been sexually abused. The trial court drew that conclusion from the behavior described in the letter, notwithstanding the lack of any testimony from the child, through the father, of any instances of sexual abuse. Furthermore, while the father asserted that this letter led him to believe that his child was sexually abused, he never contacted the school to learn more about the behavior described in the letter.

We note that the letter was dated May 24, 1995, which indicates

---

[2] The father argues that Georgia should have jurisdiction because the mother has violated their separation agreement by moving to Indiana without first modifying their visitation agreement. The UCCJA provides for jurisdiction in such a situation, but *only* for the first six months after the out-of-state move. See OCGA § 19-9-43 (a) (1) (B). In the present case, the father failed to file this action within six months of the child's out-of-state move. Therefore jurisdiction is proper in Georgia only if supported by other provisions of OCGA § 19-9-43.

that the father received the letter during the child's summer visitation with him in Georgia. The father did not attempt to seek relief in Indiana during this visitation period which would have avoided any "danger" to the child while he properly sought judicial relief. The father returned the child to Indiana with full knowledge of the director's letter. It was only when the mother decided not to return the child to the private school that the father decided to initiate this action in Georgia.

The father testified, pursuant to the Child Hearsay Statute, that the child had recently said that "his mother beats him and leaves bruises on him." While the trial court was not convinced that abuse occurred, it exercised emergency jurisdiction stating, "[w]e need to investigate this all a lot more. I'm making a finding that the child said that [the physical abuse] happened. That's all I've got right now, and that's enough. I'm not accusing Ms. Mills of being a child abuser. *Don't think that*." (Emphasis supplied.) The trial court did not make the predicate finding that its intervention was "necessary . . . to protect the child" from the mother's physical abuse. OCGA § 19-9-43 (a) (3) (B). The trial court's finding that such abuse may have occurred does not support its exercise of emergency jurisdiction.

The trial court's third basis for its exercise of emergency jurisdiction was based on the mother's nonmarital cohabitation with her fiance, a relationship that the court found "*may* be detrimental to the well being of the child." (Emphasis supplied.) We note that the trial court's finding was not based on the mother's fiance in particular or any inappropriate behavior that the child may have witnessed occurring between his mother and her fiance. Rather, the trial court's holding was based on the status of the parties and indicated that as a general matter it felt children should not be put into the custody of cohabitating couples that are not married. Assuming without deciding that the trial court did not abuse its discretion in making this finding, the trial court's determination that the relationship "may be detrimental to the child" was not sufficient to invoke emergency jurisdiction. See *Hutto v. Hutto*, 250 Ga. 116 (296 SE2d 549) (1982) (by itself, the mother's nonmarital cohabitation did not rise to the level of an "extreme emergency" that would permit the exercise of emergency jurisdiction under a similar provision of the Georgia Child Custody Intrastate Jurisdiction Act).

As outlined above, the possibility that the child's well-being "may be" detrimentally affected by a certain condition is not sufficient to support the exercise of emergency jurisdiction. Rather, the trial court must be convinced that its intervention is necessary to protect the child. OCGA § 19-9-43 (a) (3) (B). Absent an emergency condition, there is no reason to suppose that the courts of the child's home state of Indiana would be any less interested in the welfare of

the child than are the courts of Georgia. Also, the school director who authored the letter describing the child's conduct would be subject to the subpoena powers of the Indiana courts and to cross-examination. The intent and the terms of OCGA § 19-9-43 (a) (3) require that this action be heard in Indiana.

As the trial court was without jurisdiction to hear this custody dispute, its judgment is vacated, and the case is hereby remanded with direction that the trial court dismiss the complaint. See *Lightfoot*, supra at 403. We note that the father is not without recourse as he may seek to modify custody in an action filed within the appropriate forum. *Hutto*, supra at 118.

2. In light of the above, the mother's additional enumerations of error are rendered moot.

*Judgment vacated with direction. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 24, 1996 —
RECONSIDERATION DENIED JULY 12, 1996 —

*Garland C. G. Moore*, for appellant.
*Sabiston & Smith, Charles A. Smith, Nelle M. Funderburk, Lyle K. Porter*, for appellee.

